IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| John Derrick, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-03295-CMC |
| | ) | |
| Johnson Controls, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

-----------------------------------------------------------------------------------------------------

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

John Derrick ("Plaintiff") by his attorney and pursuant to Rule 56 (c) of the South Carolina Rules of Civil Procedure ("SCRCP"), hereby submits his response in opposition to Defendant Johnson Controls, Inc.'s motion for summary judgment.

## I.    FACTUAL BACKGROUND

Plaintiff is a resident of Lexington County, South Carolina and Defendant Johnson Controls Inc., ("JCI"), a Wisconsin Corporation, is a manufacturer of automotive batteries, and regularly does business in South Carolina (Defendant's Answer to Plaintiff's First Amended Complaint. at ¶¶ 2-3)[1].  On December 6, 2008, Plaintiff made several unsuccessful attempts to start the engine of a jeep that was parked in his car garage.  Plaintiff's Jeep contained an Interstate Mega-Tron Plus Battery ("Battery") that was devoid of charge (Pl.'s First Am. Compl. at ¶6).  In order to charge the battery, Plaintiff pulled it out of the jeep and placed it on a Sears home battery charger.  *Id*.  Immediately upon being put up for charging, the battery exploded making an

---

[1] Hereinafter "Def's Ans. to Pl's First Am. Compl."

1

extremely loud noise and ejecting debris and jets of mud white colored acid from all sides. *Id*. The acid oozing out of the battery fell on the Plaintiff, his jeep, Jet Ski, lawn mower, two motorcycles and several other things in the garage. *Id*. The acid from the explosion fell on Plaintiff's face and ears causing burning sensation, disfiguration, irritation and permanent scarring of skin. The acid fell on plaintiff's clothes causing burn marks and holes on the fabric of his dress, socks and shoes. *Id*. The noise from the explosion was so loud and deafening that permanent hearing impairment was caused to the Plaintiff's ears. *Id*. In an effort to avoid the acid jets and battery debris during the explosion, Plaintiff indulged in sudden jerky movements that injured his lower back and right leg. Plaintiff experienced and continues to experience sharp pain, discomfort, stiffness and numbness in his lower back and right leg. *Id*. The Battery explosion and acid exposure caused tremendous trauma to the Plaintiff, injury to his person, and damage to his property. *Id*.

## II.     PROCEDURAL BACKGROUND

On December 3, 2010, Plaintiff filed this personal injury cause of action Defendant JCI in the Court of Common Pleas for the Twelfth Judicial District, County of Lexington, South Carolina. Subsequently, the case was transferred to this court on grounds of diversity jurisdiction. On April 11, 2012, Defendant filed a Motion for Summary Judgment and a Memorandum in Support of its Motion for Summary Judgment, contending that there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law. The Plaintiff has a filed Motion to amend complaint to add Johnson Controls Battery Group Inc. ("JCBGI"), a subsidiary of Johnson Controls Inc., a Wisconsin Corporation as a Defendant to this cause of action (Pl.'s Second Am. Compl. at ¶ 3).

## III.     INTRODUCTION

Defendant's motion for summary judgment must be denied firstly because although JCBGI manufactured of the Battery that exploded causing injury to Plaintiff, it is a wholly owned subsidiary of JCI.  Because JCI has offered no evidence that, it does not wield the kind of control necessary to not to make it an alter ego of JCBGI, Plaintiff can maintain a claim against JCI.

JCI's second argument that Plaintiff's claim fails, as he has not offered any expert evidence fail as a matter of law because an expert testimony is unnecessary when it is evident that the Battery burst, and no scientific data needs to be analyzed.

Accordingly, JCI's motion should be denied in its entirety.

## IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *McClure v. Wyeth*, 2012 U.S. Dist. LEXIS 37632 (D.S.C. 2012).  It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. *Ervin v. Cont'l Conveyor & Equip. Co.*, 674 F. Supp. 2d 709, 712-713 (D.S.C. 2009). In *Flynn v. Metalcraft of Mayville*, 2007 U.S. Dist. LEXIS 36380, at *2-3 (D.S.C. 2007), the court held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

## ARGUMENT

### 1.  JCI Is An Appropriate Defendant

A summary judgment should be ideally granted to a parent company, when the subsidiary company is not completely controlled by the parent company. See *Jones v. Enter. Leasing Company-Southeast*, 383 S.C. 259, 267 (S.C. Ct. App. 2009)[2] (affirming summary judgment in favor of the negligent entrustment action against a parent company). Here, JCI is an alter ego of JCBI. Alter ego describes a theory of procedural relief. *Drury Dev. Corp. v. Found. Ins. Co.,* 380 S.C. 97, 101 (2008). "[T]he alter ego doctrine is merely a means of piercing the corporate veil." *Id.* (citing 18 C.J.S. *Corporations* § 23 (2008)).[3] Under this theory, when a parent company controls the business decisions and actions of its subsidiary, the subsidiary becomes an instrument or alter ego of the parent. *Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf &*

---

[2]     "Several factors should be considered before a parent corporation may be held liable for the torts of its subsidiaries. These include: stock ownership by parent; common officers and directors; financing of subsidiary by parent; payment of salaries and other expenses of subsidiary by parent; failure of subsidiary to maintain formalities of separate corporate existence; identity of logo; and a plaintiff's knowledge of subsidiary's separate corporate existence." *Jones*, 383 S.C. at 267 (S.C. Ct. App. 2009).

[3] *see also Mid-South Mgmt. Co. v. Sherwood Dev. Corp.,* 374 S.C. 588, 603-04 (Ct. App. 2007) (affirming the alter ego theory of recovery's application to parent and subsidiary situations).

*Yacht Club,* 310 S.C. 132, 148 (Ct. App. 1992). Control required for liability under an alter ego doctrine amounts to total domination of the subsidiary to the extent the subsidiary manifested no separate corporate interests and functioned solely to achieve the purpose of the dominant corporation.[4] *Id*.

Here, JCI offers no evidence other than an assertion that the Battery was manufactured by JCBGI. From the time JCI answered the Complaint, it has maintained, "various types of Interstate brand batteries are manufactured by different companies, including [JCBGI], a Wisconsin Corporation and wholly owned subsidiary of [JCI]" (Def's Ans. to Pl's First Am. Compl. ¶5; see also Def's Local Rule 26.01 Initial Disclosures at p. 3). In its motion for summary judgment, JCI further insists that it has advised Plaintiff that the Battery was "designed, manufactured and sold by a different corporation named [JCBGI]… a wholly-owned subsidiary of JCI" (Def's Motion for Summary Judgment at p. 2). Despite its effort make Plaintiff aware that it did not manufacture the Battery, it has done nothing to prove that JCI did not wield the kind of control that South Carolina courts have held does not constitute an alter ego. Because JCI has not offered any evidence whatsoever to establish that it is not an alter ego of JCBGI[5], it cannot succeed in its motion for summary judgment.

---

[4] Moreover, "[c]ommon officers and/or directors and public identification of one corporation as the other's subsidiary do not, without more, support the conclusion the subsidiary is its parent's alter ego or agent for the transaction of its business." *Yarborough & Co. v. Schoolfield Furniture Indus., Inc.,* 275 S.C. 151 (1980).

[5] In light of Defendant's admission that the manufacturer of the battery is it's wholly owned subsidiary Johnson Controls Battery Group, Inc., (Ans. to Pl's First Amd. Compl, ¶ 5; Mr. Liedhegner Aff., ¶ 3), the Plaintiffs have filed a motion to amend complaint and add Johnson Controls Group, Inc., as additional defendant pursuant to Fed. R. Civ. P. Rule 19. Plaintiff contends that JCI is also proper defendant in this personal injury action alleging negligence and

Defendant Johnson Controls, Inc., is liable for injury to the Plaintiff caused by the explosion of a battery, because Plaintiff reasonably believes that the battery was manufactured by it. Both the Defendant and Defendant's expert, Mr. Liedhegner, do not given any reasoning for their conclusion that the battery is manufactured by Johnson Controls Battery Group, Inc., and not Johnson Controls, Inc. Defendant's expert, Mr. Liedhegner, merely states that the battery that exploded is manufactured by Johnson Controls Battery Group, Inc., and does not put forth any reason for his belief. (Mr. Liedhegner Aff., ¶ 3). Similarly, the Defendant simply denies that it is the manufacture and indicates that such batteries are manufactured by various entities including itself and its wholly owned subsidiary Johnson Controls Battery Group, Inc (JCI's Ans. to Pl's First Amd. Compl, ¶ 5). Therefore, in the absence of adequate reasoning or proof, Plaintiff is not completely convinced that Defendant Johnson Controls, Inc., is not the manufacturer of the exploded battery. Plaintiff contends that it would be not be judicious to remove Defendant Johnson Controls, Inc., as a party to the suit, merely based on its unsubstantiated denial of responsibility. Additionally, Defendant Johnson Controls, Inc., is liable for injury to the Plaintiff caused by the explosion of a battery manufactured by it or its wholly owned subsidiary, based on the alter ego and/or the general agency principal. In *Jones v.*

---

strict product liability under the alter ego doctrine or general agency principal. The Plaintiff contends that the legal fiction of separate corporate entity between the two named Defendants should not be so extended as to enable JCI to evade just responsibility for its acts. "The notion of separate corporate existence will not be recognized where a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another, and in such circumstances the fiction may not be prosecuted to permit the corporation to evade it's just responsibilities. The fiction is introduced into the law for certain well-known purposes, but it is not invented to promote injustice or justify wrongs and when so used it is to be disregarded. See e.g., *Forest Hill Corp. v. Latter & Blum, Inc.*, 249 Ala. 23 (1947), where the Alabama Supreme Court held that the record was not free of the inference that the two corporation were one in the same once the corporate veil was pierced. The legal fiction of a separate corporate entity should not be so extended as to enable the corporation to become a vehicle to evade just responsibility.

*Enter. Leasing Company-Southeast*, 383 S.C. 259, 267 (S.C. Ct. App. 2009), the court stated that the "[a]lter ego describes a theory of procedural relief (citing *Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, (2008)). [T]he alter ego doctrine is merely a means of piercing the corporate veil. (citing *Mid-South Mgmt. Co. v. Sherwood Dev. Corp.*, 374 S.C. 588, (Ct. App. 2007), affirming the alter ego theory of recovery's application to parent and subsidiary situations). Under this theory, when a parent company controls the business decisions and actions of its subsidiary, the subsidiary becomes an instrument or alter ego of the parent (citing *Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club*, 310 S.C. 132, (Ct. App. 1992)). Control required for liability under an alter ego doctrine amounts to total domination of the subsidiary to the extent the subsidiary manifested no separate corporate interests and functioned solely to achieve the purpose of the dominant corporation (citing *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1106 (5th Cir. 1973).

In support of its motion, JCI cites *In re Aredia & Zometa Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 36060 (M.D. Tenn. Apr. 12, 2010). *Aredia* is a pharmaceutical product liability class action, the District Court at Tennessee granted summary judgment in favor of the defendant on the grounds that the defendant did not supply the defective drugs in the plaintiff's country of residence and that plaintiffs had failed to identify the correct defendant. The district court noted that the plaintiffs knew fairly early on in the litigation that they had sued the wrong entity, but had not taken corrective measures to add the right party. This case can be distinguished from *Aredia* because there the plaintiffs knew from the outset who the right defendant was, and sued the wrong entity. In contrast, Plaintiff was completely unaware until JCI answered Plaintiff's complaint, which was supported by the expert's evidence only on April 11, 2012. Although,

7

JCBGI is a necessary party, it does not absolve JCI of its liability.  Accordingly, JCI's argument fails.

### 2.  <u>Expert Testimony Is Not Required To Establish Strictly Product Liability</u>

An expert testimony is completely unnecessary in a case such as this where no scientific evidence is required to impute that the Battery burst and Plaintiff was injured.  The only question that requires to be answered is whether Defendant's "wholly owned subsidiary" manufactured the Battery that burst, which was a proximate cause of Plaintiff's injury.  Federal Rule of Evidence 701 authorizes the admission of lay opinion testimony if it is: "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  *United States v. Offill*, 666 F.3d 168, 177 (4th Cir. Va. 2011).

Plaintiff has not presented an expert witness firstly because the scope of expert analysis is limited as only fragments of the battery had survived the explosion (Mr. Derrick's Aff. ¶ 2), and the remains from the explosion are insufficient for analysis of inherent manufacturing or design defects.  Second, more than three years have elapsed since the explosion (Pl.'s First Am. Compl. at ¶6), and expert investigation, which effectively means that it would be highly unlikely that an expert's investigation would yield accurate results.  Third, the issues involved are easily comprehendible by ordinary laypersons.

Expert testimony may be used to help the jury to determine a fact in issue based on the expert's specialized knowledge, experience, or skill and is necessary in cases in which the subject matter falls outside the realm of ordinary lay knowledge.  *Watson v. Ford Motor Co.*, 389 S.C.

434, 445-46 (2010). Stated differently, expert evidence is required where a factual issue must be resolved with scientific, technical, or any other specialized knowledge. *Id*. Expert testimony differs from lay testimony in that an expert witness is permitted to state an opinion based on facts not within his firsthand knowledge or may base his opinion on information made available before the hearing so long as it is the type of information that is reasonably relied upon in the field to make opinions. *Id*. See Rule 703, SCRE. On the other hand, a lay witness may only testify as to matters within his personal knowledge and may not offer opinion testimony, which requires special knowledge, skill, experience, or training. *Id*.

Here, Plaintiff has brought this action alleging that JCI was responsible for manufacturing a defective Battery, which exploded causing personal injury to Plaintiff. Three years later, JCI – which admittedly did not manufacture the Battery – engages the services of an expert who states in an affidavit that the Battery was tampered with. The expert states that "[t]he subject battery was not destroyed as a result of the explosion. The internal components necessary to evaluate whether an internal defect existed remain present and fully capable of inspection by a qualified expert. No evidence of any deviation from the design intent was found in Mr. Derrick's battery. The battery was manufactured properly according to its specifications and the manufacturer's design intent" (Aff. Of Mr. Liedhegner's ¶6). Whereas, Plaintiff claims that the battery explosion was so significant that the internal components of the battery did not survive the explosion. (Plaintiff's Aff. ¶ 2). During the explosion, battery debris and substantial amount of the acid from the battery was thrown in all directions. *Id*. Only fragments/parts of the actual battery survived the explosion. The remains are not sufficient to inspect or infer the absence of an internal design or manufacturing defect. *Id.* The reasons for Plaintiff's injury due

to the explosion of the battery and the circumstance leading to the explosion are easily comprehendible by a layman juror and do not require expert testimony.

Mr. Liedhegner's next statement is that there were "[m]y investigation and analysis of the battery also revealed that the Derrick battery was not in the same condition at the time of explosion as it was at the time it left the control of the manufacturer (Aff. Of Mr. Liedhegner's ¶7). Mr. Liedhegner's affidavit makes a passing reference that the Battery was altered, his other statements relate the composition of the Battery. Without subjecting Mr. Liedhegner to a cross examination, JCI expects to prove that its expert's view must be considered over the fact that the Battery did explode. Mr. Liedhegner cannot testify as to what happened on December 06, 2008. What happened on December 06, 2008 was a fact, and no expert is needed to establish that the Battery burst. Because JCI is challenging a fact, which Plaintiff is disputing, summary judgment should not be granted to JCI. Before allowing expert testimony, the district court must determine that the testimony is both reliable, or scientifically valid; and relevant, that it will assist the trier of fact in understanding or determining a fact in issue in the case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). In *Daubert*, the Supreme Court of United States held that the trial court is required to act as gatekeeper, insuring that expert testimony is sufficiently reliable prior to allowing its presentation to the jury. Although the trial court plays a gatekeeper role as to all evidence, this role is especially important in the case of expert testimony because, by its very nature, expert testimony can be "both powerful and quite misleading."[6] *Id.* at 595.

---

[6]     The admissibility of expert opinion testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto

Plaintiff contends that Mr. Liedhegner did not conduct any meaningful testing or analysis to arrive at his conclusions.  Mr. Liedhegner's inspection of the exploded battery involved only external inspection of only few minutes.  (Mr. Derrick's Aff. ¶ 9).  Mr. Liedhegner neither collected battery matter as sample, nor conducted any laboratory analysis to conclude the absence of an internal defect.  *Id*.  Additionally, Plaintiff points out that only fragment of the battery had survived the explosion and the remains from the explosion were insufficient for analysis of inherent manufacturing or design defects.  (Mr. Derrick's Aff. ¶ 10).  In *Oglesby v. GMC*, the court noted that a reliable expert opinion must be based on scientific, technical or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.  190 F.3d 244 (4th Cir. S.C. 1999).  In *Oglesby*, the plaintiff's expert witness was clearly qualified to testify, but the content of his testimony was found to be unreliable, because it was based partially on incorrect facts and assumptions and generally lacked an adequate factual foundation.  (Cited by *Peters-Martin v. Navistar Int'l Transp. Corp*., 410 Fed. Appx. 612, 622-623 (4th Cir. Md. 2011).  Plaintiff contends that Mr. Liedhegner's testimony should be excluded as it is merely speculative, lacked an adequate factual foundation, did not use any valid scientific methodology and is not supported by test data or relevant literature in the field.

---

in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  In *Schrom v. Budget Rent-A-Car Sys*., the U.S. District Court of South Carolina, ruled that under Rule 702, a two-step inquiry is relevant in cases such as this one: 1) whether the expert witness is qualified; and 2) if qualified, whether his opinion is reliable, in that it is based on sufficient facts and sound methodology.  2005 U.S. Dist. LEXIS 29427 (D.S.C. Nov. 14, 2005).  "Proposed testimony must be supported by appropriate validation--i.e., "good grounds," based on what is known." *Daubert* at 590.  Mr. Liedhegner's scientific opinions are not reliable and do not meet the standard set by Fed. R. Evid. 702 and *Daubert.*

**3.** **Battery Was Defective As It Exploded Even Though It Was In The Same Form in Which It Left the Manufacturers Control.**

Plaintiff contends that the battery did not exhibit any signs of alteration and was defective as it exploded during normal use in the form/condition in which it had left the control of the manufacturer. "An article that will not operate or will not work because of a mechanical defect is not merchantable. When an article catches fire during normal use, it may reasonably be inferred that it is defective." *Seaside Resorts v. Club Car, Inc.*, 308 S.C. 47, 56 (S.C. Ct. App. 1992). First, the negative terminal of the battery was never manually gouged or altered. (Mr. Derrick's Aff. ¶ 12). The visible gauge or indentation on the negative side is due to putting cable clips on the battery terminal. All signs of alleged alterations were either superficial or occurred during the explosion. Second, the interface of the positive terminal to plate lug was never manually altered, but may have moved from its position during the explosion. (Mr. Derrick's Aff. ¶ 13). Third, the reason for the low levels of acid electrolyte in the exploded and broken remnants of the battery is because during the explosion substantial amounts of acid escaped out of the sides of the battery and landed on the Plaintiff, his jeep, Jet Ski, lawn mower, two motorcycles etc. (Mr. Derrick's Aff. ¶ 14). For all the foregoing reasons, all signs of alleged alterations were due to normal wear and tear, were superficial or had occurred during the explosion. The Plaintiff disagrees with Mr. Liedhegner's testimony that the battery exploded as a result of five (5) years of usage. Plaintiff maintains that like every average customer he reasonably expected that the battery purchased by him would not explode even if it was used beyond five (5) years from its date of manufacture. Plaintiff maintains that the battery was not used only as intended by the manufacturers and was never misused or abused. (Mr. Derrick's Aff. ¶ 17). The battery was in the same condition at the time of accident as when it left the manufacturer's control. The battery was placed on a sears home battery charger, which is

12

permissible use, when it exploded.  (Mr. Derrick's Aff. ¶ 16).  As the battery was neither physically nor chemically altered nor used for a purpose unintended by the manufacturer; therefore, an internal defective is the only probable reason for its explosion and therefore the proximately caused of Plaintiffs injuries.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment in its entirety.

ATTORNEY FOR PLAINTIFFS

*/s/ Mary P. Miles*

**MARY P. MILES**
**ATTORNEY FOR PLAINTIFF**
**440 KNOX ABBOT DRIVE, SUITE 360**
**CAYCE, SOUTH CAROLINA 299033**
**TELEPHONE: (803) 939-1177**
**FAX: (803) 939-1001**