UNITED STATES DISTRICT COURT
IN THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John Derrick, ) | |
| ) | Civil Action No.: 3:10-cv-3295-CMC |
| Plaintiff, ) | OPINION AND ORDER |
| v. ) | |
| Johnson Controls, Inc. ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion for summary judgment and on Plaintiff's motion to amend the complaint. Dkt. Nos. 58, 63. Defendant's motion was filed after the close of discovery. Plaintiff's motion was filed concurrently with his response to Defendant's motion for summary judgment. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted. **The court further directs Plaintiff's counsel to provide a copy of this order to Plaintiff and file confirmation that she has done so within seven calendar days of entry of this order.**

## BACKGROUND

Plaintiff filed this action in state court on December 2, 2010, seeking recovery for injuries he suffered as a result of an automobile battery explosion which occurred on December 6, 2008. Dkt. No. 1-1 at 4. The complaint asserted five causes of action against Johnson Controls, Inc. ("Johnson Controls" or "Defendant"), which was named as the sole Defendant. *Id.*[1]

---

[1] The five causes of action originally pleaded included (1) breach of express warranty, (2) breach of implied warranties, (3) beach of warranty of fitness for a particular purpose, (4) negligence, and (5) strict products liability.

Johnson Controls removed the matter to this court on December 29, 2010. Dkt. No. 1. Shortly thereafter, Johnson Controls filed answers to Local Civil Rule interrogatories which included the following explanation of its position:

> Defendant Johnson Controls, Inc. is properly identified, but it is not the proper defendant. It appears that the Plaintiff intended to name the manufacturer and seller of the subject battery. Upon information and belief, that entity is Johnson Controls Battery Group, Inc., a wholly-owned subsidiary of Johnson Controls, Inc. Counsel is not authorized to accept service of an amended complaint on behalf of Johnson Controls Battery Group, Inc.

Dkt. No. 4 at 3 (response to interrogatory (g), filed 1/4/11).

The matter, thereafter, lay dormant for over four months. On May 13, 2011, the court entered a docket text order directing the parties to provide information as to the status of service and, if the matter had been properly served, to advise whether Defendant was in default. Dkt. No. 8 (entered 5/13/11). Defendant responded to this docket text order but Plaintiff did not, prompting the court to enter a second docket text order directing Plaintiff to respond and show cause why the matter should not be dismissed for failure of service and failure to respond to the court's earlier inquiries. Dkt. No. 10 (entered 5/18/11). Plaintiff's subsequent response was inadequate for reasons explained in a third docket text order. Dkt. No. 12 (entered 5/19/11). Plaintiff responded to the third docket text order, in part, by filing a motion for entry of default and damages but still failed to respond to the court's original inquiries. Dkt. No. 13 (filed 5/20/11). This prompted a fourth docket text order which denied the motion for entry of default without prejudice (due to deficiencies in the motion) and again directed Plaintiff to respond to the court's original inquiries. Dkt. No. 15 (entered 5/31/11). Plaintiff responded to this order by filing a response to the court's May 13, 2011 inquiries and by filing a new motion for entry of default. Dkt. Nos. 17, 20 (filed 6/10/11).

On July 12, 2011, after full briefing, the court denied Plaintiff's motion for entry of default and damages. Dkt. No. 24. The denial was based primarily on a finding that Plaintiff had failed to effect proper service on Defendant. *Id.* The order also directed Plaintiff to show cause why the matter should not be dismissed for failure to effect service within the time permitted for service under Rule 4(m) of the Federal Rules of Civil Procedure. *Id.* at 5.[2]

Plaintiff responded by requesting additional time to perfect service. Dkt. No. 25. Defendant did not oppose Plaintiff's request. The court, therefore, granted the requested extension, allowing Plaintiff until August 26, 2011, to perfect service and file proof of service. Dkt. No. 28 (entered 7/28/11).

Before effecting service, Plaintiff filed an amended complaint as of right. Dkt. No. 31 (filed 8/15/11).[3] The court issued a summons for the amended complaint on August 17, 2011. No proof of service was, however, filed by the August 26, 2011 deadline set by earlier docket text order. This failure prompted the court to issue another docket text order directing Plaintiff to show cause why the action should not be dismissed for failure to prosecute. Dkt. No. 36 (entered September 1, 2011). Plaintiff responded by filing a proof of service which indicated service was made on the registered

---

[2] At this point, the matter had been pending for over seven months without adequate service.

[3] The first amended complaint includes a number of allegations in addition to those in the original complaint but does not name any new Defendants. One of the added allegations is "[t]hat, upon information and belief, at all the times mentioned herein, Defendant sold or distributed car batteries, including the subject Interstate Battery." Dkt. No. 31 ¶ 4. Plaintiff also explains how he came into possession of the battery, stating that "on December 2, 2008, Plaintiff . . . purchased a Used 1999 Grand Cherokee on E-bay with the Interstate Battery intact that was manufactured and sold by Defendant." *Id.* ¶ 5; *see also id.* ¶ 6 (explaining that the accident happened on December 6, 2008 after he "pulled the Interstate Battery out of [the vehicle]" and began charging it "on his Sears home battery charger"). The causes of action are the same as those in the original complaint, although the order in which they are presented is modified.

3

agent for service of process on August 16, 2011. Dkt. No. 39 (proof of service filed 9/1/11). A few days later, he filed a response to the rule to show cause asserting that he had served the amended complaint in a timely manner and asserting that "Plaintiff was under the presumption that [he] had filed the affidavit of service until the Court notified [him] of [his] failure." Dkt. No. 41 (response to rule to show cause filed 9/7/11).[4]

Johnson Controls filed its answer on September 6, 2011, a day prior to Plaintiff's response to the rule to show cause order. Dkt. No. 40. As predicted by its responses to Local Civil Rule 26.01 interrogatories, the answer denied that Johnson Controls was the manufacturer of the battery which injured Plaintiff, stating as follows:

> Defendant denies that the referenced Interstate Battery was manufactured and sold by Defendant. Answering further, Defendant states that various types of Interstate brand batteries are manufactured by different companies, including Johnson Controls Battery Group, Inc., a Wisconsin Corporation and wholly-owned subsidiary of Defendant.

Dkt. No. 40 ¶ 5. The answer asserted multiple additional factual and legal defenses including asserting that the battery was not defective and that any injury was the result of misuse or alteration.

Upon review of Plaintiff's response and Johnson Controls' answer, which did not challenge either process or service of process, the court allowed the matter to proceed but "warn[ed] counsel to comply with all court orders" and advised that "[f]uture failures to comply may result in dismissal

---

[4] The claimed date of service is something of a curiosity, given that the court did not issue a summons until August 17, 2011. Dkt. No. 33. The documents Plaintiff maintains were served further suggest that she did not serve the complaint with the court-issued summons. *See* Dkt. No. 41-1 at 1. The summons Plaintiff claims was served is also defective because it incorrectly states the number of days allowed for filing and serving an answer or motion. *Id.* (referring to a thirty-day period). This is particularly striking given that the attorney-drafted summons attached to the filed amended complaint refers to the correct number of days. Dkt. No. 31-1 (referring to a twenty-one day period). Fortunately, the court need not solve the mystery of what was served as Defendant answered without raising any challenge to the adequacy of process or service of process.

4

of this matter." Dkt. No. 44 (entered 9/12/11). The court, concurrently, entered a scheduling order which set a December 12, 2011 deadline for amending pleadings, an April 2, 2012 deadline for completing discovery, and an April 16, 2012 deadline for filing dispositive motions. Dkt. No. 45 (entered 9/12/11).

The parties appeared to comply with the scheduling order as both filed their Rule 26(f) reports on October 17, 2012. In his report, Plaintiff indicated that there was no need to modify the court's scheduling order. Dkt. No. 48 at 1. In summarizing the case and his claims, Plaintiff indicated reliance on a theory that Johnson Controls was directly responsible for manufacture and distribution of the battery under his claims of negligence, product liability and breach of warranty. Dkt. No. 48-1 at 1-2 (responses to inquiries (1) and (4)). Nothing in Plaintiff's submission suggests reliance on an alter-ego or veil-piercing theory.

Johnson Controls, likewise, indicated agreement with the court's scheduling order. Dkt. No. 49 at 1. In its description of the case, it repeated its denial that it manufactured or sold the battery. Dkt. No. 49-1 at 1 (response to inquiry (1)).

The matter proceeded without further motion or other request for judicial intervention through the various deadlines set by the September 12, 2011 scheduling order. After discovery closed and slightly before the deadline for dispositive motions, Johnson Controls moved for summary judgment. Dkt. No. 58 (filed 4/11/12). The motion rested, in part, on assertions that Johnson Controls was not the manufacturer of the battery which allegedly caused Plaintiff's injuries. Johnson Controls also noted that Plaintiff had failed to conduct any discovery or to identify an expert witness and make related disclosures. Johnson Controls argued that the failure to identify an expert witness was fatal to Plaintiff's case in light of the technical nature of the product.

Plaintiff filed a timely response to the motion for summary judgment, supporting it with his own affidavit. Dkt. Nos. 61-62 (filed 4/30/12). On the same date, he filed a belated motion to amend the complaint to add Johnson Controls Battery Group, Inc. ("JCBGI"), the entity which Johnson Controls has always maintained was responsible for manufacture and sale of the battery, as a second Defendant. Dkt. No. 63 (filed 4/30/12). The proposed second amended complaint also retains Johnson Controls as a Defendant without adding any veil-piercing or alter-ego allegations or claims. Indeed, all allegations in the proposed complaint are simply asserted against both Defendants without differentiation as to their respective roles.

Both the motion for summary judgment and motion to amend have been fully briefed. Because it may have an impact on resolution of the motion for summary judgment, the court addresses the motion to amend first.

**I.    MOTION TO AMEND**

**A.    Standard**

Although Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," Rule 16(b) mandates that a court's scheduling order "may be modified only for good cause and with the judge's consent." The Fourth Circuit has explained the interplay of these two rules as follows:

> Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.

*Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). In other words, when the deadline for amendment has passed, the moving party must first demonstrate good cause under Rule

16(b) before the court will consider whether an amendment is proper under Rule 15(a). *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998) (noting that "when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused"); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) (recognizing that party seeking to amend complaint after date specified in scheduling order must first show good cause for amendment under Rule 16(b); then if good cause is shown, the party must demonstrate that amendment is proper under Rule 15).

The "good cause" requirement of Rule 16(b) is unlike the more lenient standard of Rule 15(a) in that Rule 16(b) "does not focus on the bad faith of the movant, or the prejudice to the opposing party," but focuses on the diligence of the party seeking amendment. *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C.1997). "Good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. *Id*. (citing 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed.1990)). However, "[g]ood cause is not shown when the amendment could have been timely made." *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 460 (M.D.N.C. 2003). If a party was not diligent, the good cause inquiry should end. *Mammoth Recreations, Inc.*, 975 F.2d at 609.

**B.     Discussion**

Plaintiff argues that he should be allowed to amend to add JCBGI, as a Defendant.[5] Plaintiff's arguments are difficult to follow as Plaintiff switches back and forth between what appear

---

[5] Plaintiff was injured in early December 2008. Well over four years have passed since that time. The court, therefore, assumes for purposes of this motion that any claims Plaintiff may have against JCBGI will be barred by the statute of limitations if he is not allowed to amend his complaint to add this Defendant and given the benefit of relation back of his claims.

to be three distinct arguments: (1) that Plaintiff did not learn of JCBGI's potential responsibility until after Johnson Controls filed its answer to the amended complaint and did not have confirmation of that position until the affidavit of Joseph E. Liedhegner was filed (Dkt. No. 63 ¶¶ 3-5); (2) that Plaintiff still has grounds to question the veracity of Johnson Controls' position that JCBGI is the entity which manufactured and sold the battery (*id.* ¶ 3 (questioning sufficiency of Liedhegner's affidavit), *id.* ¶ 6 (asserting Johnson Controls "is liable for [Plaintiff's injury], because Plaintiff reasonably believes that the battery was manufactured by it")); and (3) that Johnson Controls is responsible, even if JCBGI was the actual manufacturer and seller, because it "is liable for [actions by] its wholly owned subsidiary, based on the alter ego and/or the general agency theory" (*id.* ¶ 6).[6]

Plaintiff's first argument fails for several reasons. First, Johnson Controls gave notice of its position that JCBGI was the manufacturer no later than January 4, 2011, when it filed its Rule 26.01 interrogatory responses. Thus, Plaintiff's factual premise, that it first learned of Johnson Controls' position when Johnson Controls filed its answer to the amended complaint on September 6, 2011, is incorrect.

Even if true, this factual premise would be insufficient to excuse Plaintiff's extreme delay in seeking to amend given that the answer was filed on September 6, 2011, three months before the

---

[6] Plaintiff's arguments on reply are somewhat different as he concedes that the battery which allegedly caused his injuries was "manufactured by Defendant's wholly owned subsidiary, [JCBGI]." Dkt. No. 69 at 1. He also concedes that Johnson Controls gave notice of this position in "its initial disclosures[.]" *Id.* Further, though it is not suggested by either the amended or proposed second amended complaint, Plaintiff asserts that "[o]ne of [his] main contention[s] . . . is that Defendant is an alter ego of JCBGI[.]" *Id.* at 1-2. He also suggests that Johnson Controls somehow opened the door to the belated amendment because it was only in its reply in support of summary judgment that Johnson Controls "for the first time denied that it did not [sic] have the kind of control necessary to make JCBGI its alter ego." *Id.* at 3. Johnson Controls, however, had no reason to deny alter ego status when no such allegation was made in the controlling complaint and it has consistently denied responsibility for the manufacture or sale of the subject battery throughout these proceedings.

December 12, 2011 deadline for amendment of the pleadings. Plaintiff ignored this deadline, sat idle through the entire discovery period, then sought to amend only after discovery had concluded, Johnson Controls had moved for summary judgment, and his own response to Defendant's motion was due. *See* Dkt. No. 63 (motion to amend filed 4/30/12). There is no reasonable excuse for this delay as Plaintiff was clearly and repeatedly placed on notice of Johnson Controls' position before any of these deadlines ran. *See* Dkt. No. 4 (Rule 26.01 responses filed 1/4/11), Dkt. No. 40 (answer to amended complaint filed 9/6/11), Dkt. No. 49-1 (Rule 26(f) report filed 10/17/11).

Under these circumstances, the court finds that Plaintiff has unduly delayed seeking to amend the pleadings to add a new party. This delay is without any reasonable justification.[7] It is also prejudicial to Defendant and contrary to the interests of judicial economy, as adding a new party at this late date would require the court to reopen the action for pleading, discovery, and all related proceedings when the matter is otherwise ready for disposition through motion or trial.[8]

---

[7] Plaintiff did not need to wait until Johnson Controls proved its position to seek to add JCBGI. Johnson Controls' denial of responsibility and identification of JCBGI as the manufacturer was more than adequate to place Plaintiff on notice of the need to add JCBGI as a Defendant.

[8] In his reply in support of amendment, Plaintiff argues that Johnson Controls would not be prejudiced if JCBGI was added as a party because Johnson Controls "would be a mute spectator until Plaintiff can complete the discovery with respect to JCBGI, to ascertain whether Defendant is in fact an alter ego of JCBGI." Dkt. No. 69 at 4. This argument is not only wrong as a practical matter, but suggests a fundamental misunderstanding of the alter ego theory. First, the very purpose of asserting an alter ego theory would be to hold Johnson Controls liable for JCBGI's actions. Thus, Johnson Controls would have every reason to defend such an assertion and would be ill advised to take the role of "mute spectator" while Plaintiff sought related discovery. Second, because Johnson Controls would be the entity to be held liable, it would not be necessary to add JCBGI as a party to assert an alter-ego claim. Thus, the amendment sought (adding JCBGI as a Defendant) is not necessary under the theory advanced in Plaintiff's reply memorandum. It would, by contrast, be necessary to assert an alter-ego/veil-piercing claim against Johnson Controls to proceed under such a theory. Plaintiff has not, however, sought to include any such claim in the proposed amended complaint. Plaintiff's suggestion that he should be allowed to amend the complaint and reopen discovery is also troubling given Plaintiff's apparent total failure to pursue discovery during the period allowed under a scheduling order that he agreed was appropriate and never sought to amend.

9

Plaintiff's second and third arguments do not support any different result. Instead, the second suggests a basis on which Plaintiff might oppose summary judgment and proceed under the original complaint, an argument that there is a genuine issue of material fact as to whether Johnson Controls manufactured and sold the battery. The third argument, by contrast, suggests a theory of relief (alter-ego liability) which is not suggested either by the first amended (operative) complaint or the proposed second amended complaint. Thus, neither argument suggests any basis for allowing Plaintiff to amend his complaint under any circumstances, much less so late in the proceedings.

While not determinative, the court has also considered the significant delays caused earlier in this proceeding by Plaintiff's failure to advance this action including through his failure to properly serve Johnson Controls and his failure to respond adequately, when he responded at all, to the court's various orders. The court will presume for present purposes that these failures (as well as the failure to file an amended complaint in a timely manner) were the fault of Plaintiff's counsel, not Plaintiff himself. Under some circumstances, the court would take counsel's responsibility for errors into consideration in fashioning a remedy that would not fall so heavily on the client. *See, e.g.*, *Colleton Preparatory Academy, Inc. v. Beazer East, Inc.*, 223 F.R.D. 401 (D.S.C. 2004) (considering, as two of five factors relevant to whether a party should be relieved from default, whether the party or counsel bears the responsibility for the default and the availability of less drastic sanctions). Here, there is no lesser alternative (and certainly none suggested by Plaintiff) which would avoid shifting the entire burden of the delay to Defendant. As between Defendant and Plaintiff, it is Plaintiff who should suffer the consequences of any defaults by his chosen counsel. The court, therefore, concludes that denial of the motion to amend is the only proper course.

## II.     MOTION FOR SUMMARY JUDGMENT

### A.     Standard

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

(1)     A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

    (b)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

### B. Discussion

Johnson Controls moves for summary judgment on multiple grounds. First, it argues that Plaintiff has failed to present any evidence that Johnson Controls manufactured, designed, or sold the battery. Dkt. No. 58-1 at 4; *see also* 66 at 2-5 (Reply). Second, it argues that Plaintiff cannot establish various elements of his case including that the battery was in the same condition as when it left the manufacturer or seller's control or that the accident was caused by a product defect. The second argument rests primarily on Plaintiff's failure to identify an expert witness. Dkt. No. 58-1 at 6; *see also* Dkt. No. 66 at 6-10 (arguing on reply that Plaintiff has failed to present evidence that the product was in essentially the same condition at the time of the injury as when it left Defendant's hands, or that the injury occurred because the product was in a defective condition unreasonably dangerous to the user and quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 251 (4th Cir. 1999) for both elements). The court finds these arguments persuasive for the reasons set forth below.

### 1. Absence of Evidence that Johnson Controls Manufactured, Designed or Sold Battery which Injured Plaintiff

Johnson Controls relies on the affidavit of Joseph E. Liedhegner, Ph.D. in support of its position that it did not manufacture, design, or sell the battery that injured Plaintiff. Dkt. No. 58-1 at 6; Dkt. No. 58-2 (Liedhegner affidavit). Liedhegner avers that he is a chemical engineer, automotive battery expert, and a manager with JCBGI. Dkt. No. 58-2 ¶ 1. Liedhegner also avers that he inspected the battery at issue in this action and concluded that it was manufactured by JCBGI on June 26, 2003 and sold in July 2003. *Id.* ¶¶ 2, 3.

Plaintiff does not present any contrary evidence in his response. Instead, he argues that Johnson Controls "is an alter ego of [JCBGI]." Dkt. No. 61 at 4. He also states that Johnson Controls has "offer[ed] no evidence other than an assertion that the Battery was manufactured by

JCGBI" and has failed "to prove that [Johnson Controls] did not wield the kind of control that South Carolina courts have held does not [sic] constitute an alter ego." *Id.* at 5. Plaintiff also asserts that Johnson Controls "is liable for injury to the Plaintiff caused by the explosion of a battery, because Plaintiff reasonably believes that the battery was manufactured by [Johnson Controls]" and states that "in the absence of adequate reasoning or proof, [he] is not completely convinced that Defendant Johnson Controls, Inc., is not the manufacturer of the exploded battery." *Id.* at 5-6.

Plaintiff errs in relying on an alter-ego theory as he did not assert such a claim or include any related allegations in the amended complaint. Even if such a theory was pleaded, Plaintiff's arguments would not be enough as he fails to offer any supporting evidence. His statement of personal belief that Johnson Controls manufactured the battery is, likewise, nothing more than speculation. Thus, Plaintiff's evidence is insufficient even without consideration of Johnson Controls' countervailing evidence.

It is critical here that Plaintiff bears the burden of establishing the elements of his case, including, as a threshold matter, that Johnson Controls is responsible for placing the product in the stream of commerce by manufacturing, designing, or selling it.[9] *See generally Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 251 (4th Cir. 1999) (quoting *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 356 (S.C. Ct. App. 1998) as stating "[u]nder South Carolina law, a plaintiff in an action for strict product liability must demonstrate '(1) that he was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition

---

[9] Where such a claim is pleaded, a plaintiff might also establish responsibility on an alter ego theory. As noted above, however, no such theory was pleaded. Johnson Controls, therefore, had no reason to proffer evidence or argument refuting such a theory in its motion for summary judgment.

unreasonably dangerous to the user.'"); *see also* Dkt. No. 69 at 2 (Plaintiff's concession, in his reply in support of amendment, that he "has a burden to establish the alter ego theory"). Johnson Controls might, therefore, simply have rested on the absence of evidence that it manufactured, designed, or sold the product. It did more. It presented sworn affidavit testimony of a person with knowledge who avers that the product was manufactured by JCBGI, not Johnson Controls.[10]

Plaintiff also misses the mark to the extent he suggests that Johnson Controls should have addressed the alter ego theory in its opening memorandum.[11] Given that an alter ego theory was not pleaded, Johnson Controls had no reason to address it in its opening brief. Thus, that Johnson Controls first addressed the issue in its reply is neither surprising nor inappropriate.

In contrast, Plaintiff had every reason to explore this potential basis for liability during discovery and to amend the complaint to add an alter-ego claim given Johnson Controls' repeated statements that the battery was manufactured not by Johnson Controls, but by its subsidiary. Plaintiff apparently choose not to pursue discovery on this or any other point or to amend the complaint to add an alter-ego claim. Thus, Plaintiff's inability to present this argument or to support it with any

---

[10] In its opening memorandum, Johnson Controls notes that Plaintiff "failed to conduct any fact or expert discovery in this case." Dkt. No. 58 at 4; *id.* n. 3 (noting that Plaintiff also failed to disclose an expert of his own).

[11] Plaintiff raises this argument in his reply in support of his motion to amend where he states as follows:

> When Plaintiff responded to Defendant's motion for summary judgment arguing that JCBGI is the alter ego of Defendant, Defendant *for the first time* denied that it did not [sic] have the kind of control necessary to make JCBGI its alter ego. Although [] Plaintiff has the burden to establish the alter ego theory, Defendant cannot expect the Court to rule in its favor in a motion for summary judgment and in this motion to amend based solely on its assertions.

Dkt. No. 69 at 3 (emphasis added).

14

evidence are the natural result of his (or his attorney's) tactical choices. In any event, it is not Johnson Controls' burden to anticipate every theory Plaintiff might advance and offer evidence to disprove it.

For the reasons set forth above, the court finds that Plaintiff has failed to present evidence sufficient to raise a genuine issue of fact as to Johnson Controls' responsibility for the manufacture, design, or sale of the battery at issue in this action. This requires entry of summary judgment for Johnson Controls on all of Plaintiff's claims because proof that Johnson Controls had such responsibility is necessary to all of them.

### 2. Absence of Other Critical Elements

Johnson Controls also argues for summary judgment based on Plaintiff's failure to prove other critical aspects of his case. For example, Johnson Controls notes that Plaintiff has failed to prove that the battery was in essentially the same condition at the time it exploded as when it left Defendant's control.[12] Defendant has presented evidence from its expert, who inspected the battery, that the battery was five years old at the time of the incident, the negative terminal had been gouged, and an interface on the positive terminal had been altered. Dkt. No. 69-2 (Liedhegner affid. ¶ 3, 4, 7).

Plaintiff's conclusory averments to the contrary are not enough to establish that the battery was in the same condition prior to the explosion given that Plaintiff acquired the vehicle and five-year-old battery through an E-Bay purchase only a few days prior to the explosion. Plaintiff provides no basis on which to conclude that he had prior first-hand knowledge of the battery's history. *See,*

---

[12] For this portion of the discussion, the court disregards Plaintiff's separate failure to prove that Johnson Controls was responsible for placing the product in the stream of commerce as designer, manufacturer, or seller.

*e.g.,* Dkt. No. 62-1 ¶ 2 (addressing purchase of vehicle on December 2, 2008 and events leading to explosion of battery on December 6, 2008); *id.* ¶ 17 ("The battery was in the same condition before the explosion, in which it left the control of the manufacturer as it was never used for anything other than its intended purpose i.e. to power the jeep's engine. The battery was neither physically nor chemically altered nor used for a purpose unintended by the manufacturer."). Plaintiff's various statements that he disagrees with Liedhegner's conclusions regarding misuse and alteration of the battery are, likewise, insufficient to support a contrary inference (that the battery had not been altered or misused). *See id.* ¶¶ 11-16 (expressing disagreement with several of Liedhegner's opinions). At most, Plaintiff suggests bases on which he might challenge Liedhegner's opinions. Even if these challenges were successful, they would not fill the critical gap in Plaintiff's case — the absence of proof that the product remained unchanged from the time it left the hands of the manufacturer or seller.

Because the court finds the absence of proof of this element of Plaintiff's case dispositive, it declines to address Johnson Controls' additional arguments for summary judgment.[13]

For the reasons set forth above, the court concludes that Plaintiff has failed to proffer evidence sufficient to raise an inference in his favor on the following two critical elements necessary to any of his claims: (1) that Johnson Controls was responsible for the manufacture, design, or sale

---

[13] Johnson Controls raises additional arguments including that Plaintiff cannot prove causation without an expert witness in light of the technical nature of the product. This argument would likely also be dispositive at least under any negligence-based theory. *See 5 Star Inc. v. Ford Motor Co.*, 718 S.E.2d 220, 224 (S.C. Ct. App. 2011) (quoting *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010) in case involving alleged design defects which required proof of negligence). The court need not, however, reach this argument in light of its conclusion that the matter cannot proceed as to any cause of action for the two distinct reasons addressed above.

of the battery at issue; and (2) that the battery was in essentially the same condition at the time of the explosion as when it left "Defendant's" control.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to amend is denied and Defendant's motion for summary judgment is granted in full.  **Plaintiff's counsel is directed to provide a copy of this order to Plaintiff and to file a statement confirming that she has done so within seven calendar days of entry of this order.**

IT IS SO ORDERED.

                                                                                                  s/ Cameron McGowan Currie
                                                                                                  CAMERON MCGOWAN CURRIE
                                                                                                  UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 8, 2012